No. 29,077.

CATHERINE FINIGAN, *Appellee*, v. SHIP BY TRUCK COMPANY,
*Appellant*.

(283 Pac. 485.)

Opinion filed January 11, 1930.

*Arthur J. Stanley, Arthur J. Stanley, Jr.,* both of Kansas City, *W. W. Calvin* and *Jay L. Oldham,* both of Kansas City, Mo., for the appellant.

*William E. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered damages for the death of her son who was run down and fatally injured at a street crossing in Kansas City by a truck driven by an employee of defendant.

Plaintiff charged that on the afternoon of May 17, 1924, while her son, Charles Finigan, was crossing northward on Kansas avenue at a point west of and adjacent to some railway tracks which intersect that street at right angles, a truck belonging to defendant and driven by its employee came eastward at a speed in excess of twenty-five miles per hour and ran into and over Charles Finigan, whereby he suffered injuries which caused his death. She alleged that defendant was negligent in various particulars—driving the truck at an excessive speed, failure of driver to warn the deceased, failure to turn out so as to avoid a collision with him, failure of driver to keep a lookout for persons on the street although he knew that that part of the street was a congested district, and that the truck driver—

"Carelessly and negligently failed and neglected to check the speed of said truck or to stop the same, although he could and did see the said Charles Finigan on said street a distance of more than 75 feet away and had a clear view of said street for some distance before reaching the said Finigan and beyond."

Defendant's answer alleged that Finigan's injuries were sustained by his own fault and negligence in failing to keep a proper lookout for automobiles and trucks and—

"In running into a moving truck when he saw or by the exercise of ordinary care could have seen such truck and the rate of speed at which it was running, in ample time to have avoided any accident or injury and in ample time to have kept in a place of safety."

The place where the accident occurred was not an ordinary street intersection because some railway tracks occupied what would otherwise be a street. Immediately west of those tracks Kansas avenue comes from the west and converges with the next parallel street north of it. A considerable space of Kansas avenue lying west of the railway tracks is used as a north-and-south crossing by large numbers of pedestrians.

Plaintiff's evidence tended to support the principal allegations of her petition. Defendant's evidence tended to show that the afternoon was clear, that the deceased staggered out from between parked automobiles on the south side of the street and ran northward with his head down and blindly collided with the side of defendant's truck.

The jury returned a verdict for plaintiff and answered one special question:

"Q. 1. With what part of the truck in question did Charles Finigan, plaintiff's decedent, come in contact? A. Front part of truck body."

Judgment was entered for plaintiff and defendant appeals, making but one specification of error, which reads:

"The trial court erred . . . in overruling appellant's motion for judgment in its behalf on the special finding notwithstanding the general verdict."

Taking into consideration the issues of fact formulated by the pleadings, it cannot be said that the solitary fact that the front part of the truck came in contact with Finigan required a judgment *non obstante* to be entered in defendant's favor. In so far as that isolated incident was concerned, it rather tended to support the plaintiff's theory of the case, to support the allegations of her petition, and to harmonize with the general verdict. Therefore this

single specification of error formally· urged against the judgment cannot be sustained.

The foregoing conclusion might very well dispose of this appeal, but the court instructs the writer to deal with another matter argued in defendant's brief—contributory negligence of the deceased as shown by plaintiff's evidence. On this vital matter plaintiff's brief does not help much; she contents herself with a résumé of the evidence tending to prove the negligence of defendant—which, of course, is a waste of paper and printer's ink since the jury accepted her evidence on that score as true and we are bound to do likewise.

But plaintiff alleged in her petition that defendant's truck driver coming from the west at a speed in excess of 25 miles an hour "could and did see Finigan . . . in time to have slackened speed . . . a distance of more than 75 feet away and had a clear view of said street for some distance before reaching the said Finigan and beyond." A considerable portion of plaintiff's evidence tended to support that highly significant allegation; and aside from the matter of speed at which the truck was traveling, defendant's evidence was to the same effect. The street thereabout was 117 feet wide. Two street-car lines occupy the middle of it.

Monche, who was following defendant's truck in his own automobile just prior to the accident, testified:

"I was driving around 25 or 30 miles an hour. . . . I noticed this truck ahead of me. This was a great big truck; a big black box-like thing—bigger than a street car and similar to a big large moving van. I would say this truck was in the center of the street. . . . I don't know what portion of that truck struck this man. . . . A. I will tell you the only thing I saw was the wheels going on over him. . . .

"*Cross-examination:*

.    .    .    .    .    .    .    .    .    .    .    .    .

"There were no other vehicles between me and the truck.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Didn't you sày awhile ago that big 15-foot truck cut off your vision so you couldn't see down the south side of it? A. Yes.

"Q. Then how did you see Mr. Finigan? A. Well, the street is wider down there.

.    .    .    .    .    .    .    .    .    .    .    .    .

"A. . . . As he [truck driver?] went down he [Finigan?] got further and further in the street; of course I saw the man standing there."

Lowe, police sergeant, testified:

"Finigan, just before he was struck, was crossing Kansas avenue toward the post office, when I saw him. Kansas avenue is a wide street. I went to

Charlie as he was knocked down and called the ambulance. His left leg was tore off. There was nothing between Finigan and the truck that would have prevented the driver from seeing him. Nothing out there to obstruct the view. Charlie was about in the middle of Kansas avenue. Charlie was out in the street a sufficient length of time for this fellow to have seen him."

From the allegations of plaintiff's petition last quoted and the evidence of Monche and Lowe, summarized as above, the suggestion intrudes that as defendant's truck driver could have plainly seen Charles Finigan standing in the street or walking northward across it in time to have slackened speed and avoided the collision, it is rather obvious that Finigan could similarly have seen and avoided the huge truck described by the witness Monche as "a big black box-like thing—bigger than a street car and similar to a big large moving van." That suggestion doubtless was a strong point for argument before the jury to support the defense of contributory negligence. But it cannot be designated as anything more than a jury argument; it is not so potent and conclusive of that issue that the district court or this court could rule as a matter of law that the dead man was guilty of contributory negligence. We do not overlook the fact that defendant's evidence tended to establish Finigan's negligence. The truck driver and a number of witnesses for defendant gave testimony which, if believed by the jury, would have established a very plain case of contributory negligence. Thus Rapier, a witness for defendant, testified:

"I saw a man come out on the south side. He came from the telephone post at the corner of the building, going north, kind of stooped over in a running position, trying to run. He was just ahead of the truck. . . . I saw the man running. He came out from behind the cars and was almost in the middle of the street. . . .

"Q. Did you see the truck strike the man? A. I saw the man strike the truck.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"He was struck half way between the front and rear of the truck. It was the side of the bed struck him."

Lucas testified:

"I saw Finigan before the collision. Looked to me like he came out of the cigar store or pool hall on the corner by the telephone pole, on the south side of Kansas avenue. Several cars parked on south side of the street, straight with the curb. . . . He was headed practically north. Came out from between the cars there. Looked to me like he was staggering along. . . .

"I continued to observe Finigan and it looked to me like he stepped into the side of the truck—knocked him down and he fell under the right rear wheel."

But if the function of the jury is not to be usurped by this court our appellate review cannot be affected by that testimony. Conceivably all that evidence was untrue. Certainly the jury thought so. That was the jury's business and the trial judge's supervisory responsibility, not ours. Not being accorded that credence which would have brought about a different general and special verdict, it is unavailing to disturb the judgment, and the judgment is therefore affirmed.

JOCHEMS, J., not participating.